Good morning, Justices. My name is Arthur Robinson, and I'm here representing Daniel Mahoney, the appellate in the case. There are three issues that we have brought on appeal. One has to do with some Senate judgment opinions issued by Judge Burgess in the District Court, the jury instruction that he gave the jury at trial, and his decision concerning whether or not Mr. Mahoney, because he lost the trial in his civil rights, or what we call Section 1983 case, should have to pay attorney's fees. In dealing with the first issue, the Court relied on Lambert v. Washington, which was a case that was decided several years before the incident that happened in this case, which was August 2004. And in Lambert, the Ninth Circuit made it pretty clear that under ordinary circumstances, police who have reasonable suspicion to make an investigatory stop cannot, however, detain someone with the use of handcuffs and other restraints. Counsel, in this case, didn't the police have cause to arrest your client for assault in the fourth degree right at the time they arrived, where he had beaten on the truck, thrown rocks at the truck while his wife was sitting inside, had done various other very aggressive acts? Well, the facts of the matter are... And the police knew that at the time they arrived? All the police knew at the time they arrived is what the dispatcher had relayed to them from the 911 call. Correct. And one of the things they relayed is that she was sitting in her truck and he'd been throwing rocks at her. With the doors closed, with the windows closed, in the driveway. Right. And the husband was sitting on a bed at that point in time. Well, she had reported and the dispatcher had told them that he'd been beating on the truck and throwing rocks at it. And trucks are not invulnerable. And that seems to me to be reasonable cause for belief that she was in fear of imminent physical harm, which is assault four under Alaska law. Well, it may be, but the information that the police have is totally uncorroborated. If they wanted to know whether there was a factual basis for an assault, they should have gone up to the house where Melody was and knew where she was to see what evidence she could show them that, in fact, he beat on the truck, threw rocks on the truck, ran over the bed. None of that was there. Police have probable cause. Is there any case that says they have to have corroborative evidence? Generally speaking, they have to have evidence based on some factual basis, some knowledgeable facts. It can't just be based simply on a telephone call. It has to be based on what the police can observe as knowable facts that would lead them to believe there's probable cause for arrest. And I cited in the brief a couple instances where the courts have held that a 911 call alone is not enough, that they still have to corroborate even a citizen's information. So in this case, they didn't have any of that. Well, they corroborated his identity through the clothing descriptions and his location, so they corroborated some of the tangential events. Yeah, but somebody's dress and somebody's location doesn't indicate that an assault occurred at all. And in this case, the person making the call was the wife, so she may obviously know what he was wearing and who he is, but that doesn't get to the criminal nature of what was involved here with her call. It doesn't inform the police of any known facts that, in fact, the truck was beat, rocks were thrown, bed was run over. They didn't have any of that. They went directly to Mr. Mahoney, and when they confronted him, he basically asked them if they had a search warrant, told them nothing had happened, and then said, I don't have to tell you. It was at that moment that they, in our opinion, arrested him. Counsel, even assuming that you're correct on sort of the Fourth Amendment problem, that is whether the police really had probable cause to arrest him and therefore were entitled to handcuff him and detain him in some way, that argument probably would have a lot more force if we were here on a suppression motion in a criminal action. But you're not. You're here in a civil suit. And so you not only have to overcome the hurdle of demonstrating the constitutional violation, but then you have to show that it was so clearly established that the police officers knew at the time that they were doing it that they were violating the Fourth Amendment. So what cases have you got? What case do you have? I don't have to show that those two particular officers knew, but I have to show that an objective, reasonable officer would know. That's true. What case do you have that would demonstrate that a reasonable officer would know at the time that they were detaining Mr. Mahoney? Excuse me, I'm going to get stuck in the paper. What cases do you have that should have indicated to a reasonable police officer at the time that these officers detained Mr. Mahoney that they were violating the Fourth Amendment? It should have been clear to them, obvious to them. Because if it's a closed question, you may win on a suppression motion, but you don't win on a civil suit. In a civil suit, the question really is whether or not it was a disputed fact that should have gone to the jury in the civil case. Lambert is very illustrative about it being well established that you cannot do a couple things. One, you cannot, under ordinary circumstances, place people in restraints when you do an investigatory stop. That was well established long before this incident occurred. Number two, Lambert also talks about probable cause and the necessary element of it before you make an arrest. That was also well established before this incident occurred. So a reasonable police officer knew or should have known that you can't detain people by using restraints and handcuffs unless it's an extremely unordinary situation. And two, you can't make arrests without probable cause. I mean, all the officer needs to know about that really is that the Constitution has said you can't make arrests without probable cause. So it was well established. Then the only question is whether there was a violation. And that turned on facts in the case. And those facts we submit should have been submitted to a jury without an erroneous summary judgment decision by the district court. On both instances, on the stop, detain, handcuff instance, and on the arrest with probable cause for disorderly conduct. You know, the court sort of did this in stages in what we think was just an attempt to pretty much gut Mr. Mahoney's excessive force claim. But that claim went to the jury. Yes, it did. But we also argue that the district court gave some jury instructions about his prior rulings that were unduly prejudicial to Mr. Mahoney. Was there an objection to those instructions? Yes, there was. There certainly was. I asked the district court to add in his… That's a different point. I saw that in your brief. But there was an objection. If you did agree to the instructions that the court gave, you wanted addition. Except, yeah, right, I wanted addition. He wouldn't do that. So I considered that to be an objection because he wouldn't give the plaintiff additional language. So I believe there was an objection. There was also an objection to the fact that he didn't explain to the jury, that the district court judge didn't explain to the jury, and answer questions concerning that very issue about detention. After the jury was instructed, did you then object to the instructions that you previously had indicated were appropriate? Yeah, I made it clear, I thought, to Judge Burgess that I didn't approve wholly of that instruction because it didn't include the fact that he also said there was no facts to support that he was a threat to the safety of the police officers or others. So I think that was pretty clear to the judge at the time. My question was, after he instructed, did you then indicate to the court that the court had erred in the instructions that previously you had agreed to? Well, you know, it's been quite a while back. I haven't looked at the transcript. I think that's required. Well, maybe it was, and if I didn't do it, you know, I didn't think that I had to since I made it pretty clear from the outset that I objected to that instruction without additional language. What is incorrect about the trial judge's observation that the issue of whether or not your client was a threat was one of the disputed issues of fact and it would have been a comment on the evidence to have given the requested instruction? Why is that reasoning incorrect and why is that an abuse of discretion? Well, we believe that it was abuse of discretion because if the court was going to give the jury his impression of what happened. How did that occur? Well, he said he was detained. That's a factual question. He said that the police used reasonable force. No, no, he didn't say that. I beg to, the instruction was, the instruction. That they could use reasonable force. That's a statement of law, is it not? That in detaining someone, the police may use only reasonable force and that the question for the jury is whether the force was reasonable or was excessive. Well, once he told them they had the authority to do so, that's a factual question. That's a legal question, whether they had lawful authority. That was a result of a factual determination, wasn't it? When he says that based on the facts, I've decided that they have lawful authority to make the detention and hand covering. That's a factual question. That was pre-decided by the court. Well, that goes back to your first issue. But if they had probable cause to arrest him, then they could arrest him. Well, that also goes back to the factual question, too, doesn't it? I mean, that goes back to whether or not there was sufficient facts for probable cause. But your contention in front of the jury was an excessive force was used. That's correct. Didn't the court's instruction pinpoint that precise issue for the jury to consider? Well, certainly it did, but that doesn't mean that they weren't unduly prejudiced as a result of that. I mean, our position is that had, if the court is incorrect about its summary judgment rulings and the jury was not instructed that the police had lawful authority to detain and hand cover or arrest Mr. Mahoney, then we could have argued that any, we could have, if he went ahead and instructed the jury what it takes to have probable cause and what it takes to be able to detain him. That's really your first issue, though, but once the excessive force claim went to trial, the instruction to the jury was, along the following lines, the question for you, the jury, is whether the force that was used, I'm paraphrasing, but it was essentially the question for you, the jury, is whether the force that was used here was excessive. True. That's the question for you, the jury. Why isn't that a correct statement? Because it isn't a question of whether it's a correct statement. That's what the jury had to look for, you know, decide. The question is whether or not in doing so they were unduly prejudiced in doing it, and we argued that. Had there been no summary judgment decisions in the police favor and the court would have had to instruct the jury on what probable cause means, what detaining means, what detaining and use of handcuffs or other restraints mean in an investigatory stop, then we would have been able to argue to the jury and have them decide whether or not there was a proper detention. Because if it was an improper detention, an improper seizure, an improper arrest, then any force would be excessive. Any force would be excessive. That's back to your first issue. So that's what we were not allowed to argue to the jury, was that any force that the police used in unjustifiable circumstances where there's no reason to turn this detention into an arrest and no probable cause for an arrest, then any force exhibited by the police would be excessive. Thank you. You're down to about half a minute if you want to save some time for rebuttal. I will. We don't mean to trip you up either literally or figuratively. May it please the Court. My name is Jonathan Woodman on behalf of Trooper Brian Barlow. My co-appellate counsel, Frank Kozen, and I are going to split this argument. I'm going to take ten minutes and he will take five minutes. Addressing some of the points made by my appellant's counsel, I did want to point out one matter regarding the facts. When the dispatcher was speaking with the officers, the dispatcher told them that Mr. Mahoney was throwing rocks at his wife. Going back through that transcript of the trial and the testimony, it was not clear that the officers were ever told that she was in a truck while the rocks were being thrown at her. So as far as they knew, she was not inside of a truck when rocks were being thrown at her. They were told eventually. Would that make a difference, though, since windows can break and we don't know how big the rocks were, but you could definitely get hurt? Certainly. I think the officers had every reason to believe that an assault had occurred and that there was danger to the victim. But I think it's even clearer that there's danger to the victim when rather than being locked inside of a truck with tempered glass windows, because she's potentially outside, the officers didn't have that information at the time that they arrived on scene and were looking for Mr. Mahoney. There was also discussion about whether or not the information that had been provided by Mr. Mahoney's wife had been corroborated when they arrived on scene. The court addressed some of these issues already, but when the officers arrived on scene, Mrs. Mahoney had given them the location where Mr. Mahoney could be found, and that is, in fact, where he was found. She described what he'd be wearing, and that is, in fact, how he was attired. She described that he would be intoxicated, and he was, in fact, intoxicated when they arrived. And finally, she gave the officers his name, and when they arrived and spoke to Mr. Mahoney, he acknowledged that he was, in fact, Daniel Mahoney. So before the interaction really even gets started between the officers and Mr. Mahoney, they've been able to corroborate some of the facts that had been provided to them by the alleged victim in this case. It is the position of Trooper Barlow that the motion for the grant of summary judgment was appropriate as to the issue regarding the detention and handcuffing in this case. The court below properly addressed the Lambert factors and found that two of them had been met, that Mr. Mahoney had been uncooperative in his interaction with the officers, and that there was reasonable suspicion to believe that he had recently engaged in a violent crime. With those two factors having been met, then, it was reasonable for the officers to handcuff and detain Mr. Mahoney while they investigated further his wife's claim of domestic violence. Regarding the jury instruction issue, there was no objection prior to or after the jury instruction was given to the jury. That instruction was a stipulated instruction that was crafted between the parties and presented to the court, and then the court presented it to the jury. It sounds like the real objection to the jury instructions is tied in with the first issue. And so let me ask you this. If we were to disagree with your position on the first issue and the question of whether the detention was reasonable should have been given, then the instructions also would have had to match that. So it sounds like, I guess here would be the way I would say that. If we were to reverse on the first issue, would we have to send the whole case back on the theory that the plaintiff is giving us, which is that it's all tied together, that they might have had a different view of the excessive force if they had a different view of the first claim? Well, I'm not sure it would be required to send the entire case back since the jury has already determined that what occurred during the handcuffing detention did not amount to excessive force. Now, the plaintiff wanted to argue that what occurred, that the officers had no authority to lay hands upon his client and that, therefore, any touching was excessive force. And I suppose that would be an issue that would have to go back to the trial. That's what he's argued before us, that no force was permitted at all under the circumstances. Yes, I believe that is what he's arguing. And obviously we disagree. I think it's also worth pointing out that it's clear on the record that one of the reasons why the court would not give the request and instruction that the appellant requested was because it was an incorrect statement of the court's prior rulings. The appellant asked that the court instruct the jury that the court had found affirmatively that Mr. Mahoney was not a threat of harm to the officers, and that is not what the court found. The court specifically said in its order that it was a close call whether it could find as a matter of law on a motion for summary judgment that Mr. Mahoney was in fact a threat of harm to the officers and erred on the side of caution and decided not to make that affirmative ruling, but in doing so did not make the converse ruling that as a matter of law Mr. Mahoney presented no threat of harm to the officers. And it's clear from the court's order that that is not at all what the court actually found in this case. So, counsel, would you turn to the attorney's fees question and tell us why this was frivolous? Certainly. I think that the lower court in its order addressed the frivolousness fairly strongly in its order. By the time this case gets to trial, Mr. Mahoney is down to solely the issue of excessive force. And in fact, by the end of the trial, his sole argument seems to be that excessive force was committed upon him when the officers lifted him off the ground by his handcuffs, which caused his shoulder to become dislocated. There's no dispute that his shoulder was dislocated. None at all. At some point. That is true. And that it was caused by the officers. Well, I wouldn't go quite that far, Your Honor. In a preexisting condition. But at some point, it wasn't his daughter who did it and he didn't dislocate his shoulder himself. It's likely that it was the officers. That is where I would perhaps disagree, is that there was testimony that it was entirely possible that Mr. Mahoney did dislocate his own shoulder because when the officers were holding Mr. DeBeau, had hold of that arm and was holding it, there was testimony that Mr. Mahoney was bucking and thrashing against Mr. or Officer DeBeau holding that arm stationary. Dr. Ballard testified that. But there isn't any possibility that there's anybody else except for the officers or Mr. Mahoney involved in the dislocating of his shoulder. Oh, correct. No, no, there wasn't some third party who walked in and dislocated and walked away. No. I have somewhat, maybe one step further than the question that Judge Bybee has just asked you, but along the same lines, it was my understanding of the record that the defendant stipulated that the claim of excessive force should go to trial and that it was not appropriate for summary judgment. And if that's so, why isn't there judicial estoppel or some similar theory that prevents you from now saying, well, we agreed that it wasn't appropriate for summary judgment and needed to go to trial, but since you went to trial, it's frivolous, and so we get all our fees. That seems like bait and switch. Well, Your Honor, the courts have obviously set, and appropriately so, a very high bar for the award of summary judgment. And a very high bar for the award of fees in a case like this in favor of a defendant. Absolutely true. I'm not disputing either of those facts. But in order to get summary judgment, courts view the facts in the light most favorable to the non-moving party. In this case, that would be Mr. Mahoney. They also don't take into account credibility issues at the time of deciding motions for summary judgment. Even though the defendants felt that the case was frivolous and noted so in correspondence with Mr. Robbins and Mr. Mahoney's counsel, which are now part of the record, nonetheless, in the view that the court would have to view the facts in the light most favorable to Mr. Mahoney, and with the knowledge that he would testify that an event which only he witnessed and only he would testify actually occurred. And it was possible that a jury would believe him? You know, Your Honor, I would have to say I don't think it was reasonably possible that a jury would believe him. In light of all the facts in the case. This jury did not happen to believe him. That is true. But the whole point of saying that the case had to go to trial was that it was possible for a jury to believe him. Possible. But not reasonably so. So why is it frivolous when someone says I have a version of events where I was present and the other people present who have their own self-interest have their version of events? We need to tell these two separate versions of events to a jury. Why is that frivolous? I think it is important to look at the facts of what actually went to trial, what came out at trial. Mr. Mahoney's theory was that he was lifted off the ground by his handcuffs and that this dislocated his shoulder. He testified to that even though the officers denied that it occurred that way. Dr. Ballard testified that such a mechanism would be unlikely to cause his shoulder to become dislocated. None of the other eyewitnesses that Mr. Mahoney called at trial, Warren Woodland, Kathleen Crookshank, his own daughter Shelly Mahoney, all of whom were present and witnessed the arrest, none of them testified that they saw this event take place. Mr. Mahoney testified and acknowledged that he was intoxicated at the time that his memory of the events was somewhat cloudy. Those are all reasons why you could persuade a jury. But what makes that then frivolous? A case is frivolous. Let me make sure I have my language correct. A case is frivolous when the result appears obvious. In light of all of these factors, including Mr. Mahoney's own testimony that the arrest actually occurred in a different manner. I'm sorry. That standard comes from which case? I'm sorry, Your Honor. That case comes from Galen v. County of Los Angeles, 477F3652. And in that case, what was obvious? Was that as a matter of law? Was that as a matter of fact? In that case, the question was should it have been obvious to the party before going to trial that the claim could not be won? And that's our position in this case, that it should have been obvious to the plaintiff that his claim could not be won in this case, that there would be mountains of testimony opposed to him, only his own inconsistent recollection to support his claim, and that a jury would have to find by a preponderance of the evidence that his own inconsistent testimony was a basis of finding that the officers had engaged in excessive force. It was unreasonable to believe that a jury would come to that conclusion in light of the evidence in this case. Even though you stipulated and the district court allowed it to go forward to a jury? Yes. And I can cite another line of cases in which cases that are ultimately viewed as frivolous may well survive motions to dismiss under a system of notice pleading that does not require factual details. Motion to dismiss is quite different than summary judgment. I'm sorry. And allow me to continue if you would. And even motions for summary judgment in which the evidence may be presented in sketchy fashion and credibility may not be taken into account. And that's a line of cases from the Second Circuit, Greenberg v. Hilton International Company, 870 F. 2nd, 926. Is that case cited in your brief? It is not, Your Honor. Would you put any additional citations that were not in your brief, see the clerk afterwards, and would you write those down for opposing counsel and for a copy for the court? I would be happy to do so, Your Honor. Thank you. And I should really turn this over to Ms. Kosiol. Yes, Mr. Kosiol, you're welcome to add anything on behalf of your client for two minutes. Well, no, your side had 15, so if you can summarize. We're down to two approximately. Okay, I thought I was going to get five, but all right. The reason why I'm Frank Kosiol, I represent Officer DeVoe. The reason why the case is frivolous is if you just look at Mr. Mahoney's own testimony, the essence of the excessive force case was his assertion at trial that the shoulder dislocation occurred after he was handcuffed, when he was picked up by the handcuffs. However, at the beginning of the case, very early in the case, he answered an interrogatory in which he said the dislocation occurred during the struggle, not after the handcuffing. It morphed into at his deposition before the summary judgment motion, well, it could have been either way. The reason why we had to concede it could go to trial is he ended up testifying it could go either way in his deposition. So obviously if we made a motion for summary judgment, he'd say, well, it was the other way. But that had all happened before the defendants agreed that the claim should go to trial. That inconsistency was already known. Oh, yes. When we decided not to move for summary judgment on the excessive force claim, we, of course, knew that, wherein he answered in an interrogatory that the dislocation occurred during the struggle. So between the time of the summary judgment where you said this claim is not appropriate for summary judgment on the time of trial, nothing changed factually in the development of the case. The only thing that changed was he became certain at trial that the dislocation occurred. I said between those times. Nothing occurred between those times. So you said this claim should go to trial. There's a factual issue for the jury here. This claim should go to trial. It went to trial. Everybody told their version of events. The jury did not think that the plaintiff had proved the case by a preponderance of the evidence, and so you've got a judgment in your favor, but I still have difficulty seeing why that makes it frivolous. All I can say is the only way he could convince a jury is to say that he was wrong in his interrogatory answer, that he had time to discuss with counsel, and he put in an interrogatory answer, and he did 180 at trial. That is frivolous for somebody to do that with no explanation. His memory didn't improve. Why is it frivolous if the jury might well have decided that he was telling the truth when he said what he said at the interrogatory? We did not think we could convince the judge. You rolled the dice when you said it should go to a jury, didn't you? Not the dice on frivolousness, we don't think, because we didn't think we could convince the district court judge that by the time of his deposition, he had two different versions, and we're going to convince the trial judge, you've got to accept the first version that was in his interrogatory. We didn't think we convinced the trial judge of that, but it was frivolous for him to do that. One other thing I might want to point out on frivolousness, and the trial judge could have focused on this and it's in my brief, is he and his wife's testimony was that his actions, the beating on the truck, the throwing rocks at the wife, it didn't cause her fear. What occurred was she was fearful that she might hurt him. But that has nothing to do with the excessive force piece of it. No, it has to do with the frivolousness. Well, the frivolousness has to relate to the claim at issue, because the peripheral things are interesting, but the claim was excessive force. So the elements, it would have to, it seems to me anyway, that the frivolousness would have to go to the elements of the claim and not to whether other testimony was obviously wrong that was not a part of the elements of that claim. Well, I would think you could consider, and the trial judge could have considered, the incredulousness of such testimony, that somehow he wasn't causing fear in his wife, but that... I mean, once you start down that road, then it seems to support Mr. Robinson's contention that the officers had a duty to corroborate here and that the officers may have been out of line here to have gone here thinking that they were arresting him. That seems to put into question then the very first issue, which was the appropriateness of the grant of summary judgment. I don't think that had anything to do with frivolousness, but if that's the way you want to argue it, that seems to open everything else back up. I don't think so, because we agree, Officer DeVos' view was that there was probable cause from the very beginning. You could lose probable cause, I guess, if you discover things along the way. Up to the point where Trooper Barlow said you were detained, there was no reason to disbelieve the spouse's report. In fact, Mr. Mahoney lied to the officers when he said nothing happened. It is a rather unusual event for a spouse to run over the marital bed with his truck and then sit on it in front of the wife. Again, all of that seems to go to the question of whether the grant of summary judgment was appropriate. That doesn't really have anything to do with whether this claim was so frivolous that there ought to be an award of attorney's fees under 1988. One last question, which is, assuming that we disagree with you and we disagree with the district court that this was frivolous for purposes of 1988, what happens next? You should affirm the ruling on the Rule 82 attorney's fees, because there were state claims, there were equal number of state claims as there were federal claims on false imprisonment, false arrest, and excessive force. And we prevailed on that. And if you don't award on Rule 82, you'll encourage form shopping, because you could get it if you were in state court on those state claims, but if you come to federal court and you deny a Rule 82 attorney's fees, it would encourage a litigant to form shopping. Thank you, counsel. Mr. Robinson, you have a little bit of rebuttal time remaining. Let me just address the sequence of events concerning the inconsistent statement from Mr. Mahoney. Mr. Mahoney answered an interrogatory before his deposition, and in his interrogatory he gave two theories as to, not one, but two theories as to how his shoulder could have been dislocated, so it could have happened in the struggle or could have happened when they lifted me up by handcuffs off the ground. He was then deposed. At the deposition, Mr. Kozios, he says, it's important to me to know which one was it, Mr. Mahoney, and Mr. Mahoney at his deposition back in 2007 said, the police grabbed me by the handcuffs and pulled me off the ground. That's the same testimony that he gave at trial. He had already clarified the interrogatory at his deposition. Judge Berg just knew that when he read Mr. Mahoney's deposition, hopefully at the time he was deciding the summary judgment motions. So this idea that Mr. Mahoney came up with some inconsistent story at trial, in other words a fabrication, a recent fabrication at trial, to avoid the summary judgment issues is just not true, period, because the sequence of events doesn't bear that out. Thank you, counsel. The case just argued is submitted. We appreciate very much the arguments of all counsel.
judges: Alarcon, Graber, Bybee